UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NOLAN LEGEAUX, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-13773** |
| **BORG-WARNER CORPORATION, ET AL** | **SECTION: "I" (4)** |

**ORDER;**

Before the Court is a **Motion for Leave to File First Supplemental and Amended Complaint** (**R. Doc. 37**) filed by Plaintiffs Nolan and Susan Legeaux seeking an order from the Court to allow the Plaintiffs to file a supplemental and amended complaint in order to add Taylor-Seidenbach, Inc. as a defendant and to reflect additional facts and information. The motion is opposed. R. Doc. 41. The motion was submitted on October 5, 2016. For the following reasons, the motion is **DENIED.**

**I.    Background**

This action was removed from the Civil District Court for the Parish of Orleans on August 11, 2016 on the basis of 28 U.S.C. §§ 1332 diversity jurisdiction on the motion of Defendants Puget Sound Commerce Center, Inc., Vigor Industrial LLC, and Vigor Shipyards, Inc. R. Doc. 1. In particular, the Plaintiffs allege that Plaintiff Nolan Legeaux worked in construction, at industrial plants, and at ship yards from 1965 through 1979 during which time he was exposed to asbestos. R. Doc. 1-1, p. 6. Plaintiffs further allege that Nolan Legeaux suffered severe injuries and damages as a result of his exposure to asbestos, particularly Lung Cancer. *Id.* at p. 6-7. Plaintiffs filed the instant action originally against twenty-three Defendants who manufactured, sold, designed, supplied, distributed, mined, milled, re-labeled, re-sold, processed, applied, or installed products containing asbestos and five Defendants who employed or owned the premises where the Plaintiff worked. The Plaintiffs seek damages from the Defendants under theories of negligence, product

1

liability, strict liability against premise owners, and strict liability against employers. R. Doc. 1-1, p. 8-15.

At this time, the Plaintiffs seek to add non-diverse Taylor-Seidenbach, Inc. ("Taylor-Seidenbach") as a defendant. Defendants Puget Sound Commerce Center, Inc., Vigor Industrial LLC, and Vigor Shipyards, Inc. oppose the motion, arguing that the motion is "simply a shot at the Court's diversity jurisdiction." R. Doc. 41, p. 2.

## II.     Standard of Review

Generally, Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ...and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)).

Nonetheless, the Court "should scrutinize an amended pleading naming a new nondiverse defendant in a removed case 'more closely than an ordinary amendment.'" *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987)). This increased scrutiny is rooted in 28 U.S.C. 1447(e), which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy the subject matter jurisdiction, the Court may deny joinder or permit joinder and remand the action to the State Court." The Fifth Circuit has developed a four-part analysis for determining if the amendment should be allowed: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182; *see also, Priester v. JPMorgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (noting that *Hensgens* factors are used "in determining whether to permit joinder of non-diverse parties").

## III.   Analysis

Here, the Plaintiffs have filed a motion for leave to a file supplemental and amended complaint. R. Doc. 37. The Plaintiffs seek to add the non-diverse Taylor-Seidenbach as a defendant to the instant litigation. *Id.*

The Defendants have opposed the motion, arguing that the motion amounts to a thinly veiled attempt to defeat the Court's subject matter jurisdiction. Because the Plaintiffs are attempting to add a non-diverse party through their amendment, the *Hensgens* factors are the appropriate means of evaluating the Plaintiffs' motion. *See, Priester*, 708 F.3d at 679. Applying those factors to the instant motion, the Court finds that the factors weigh in favor of denying the Plaintiffs' request.

### A. First *Hensgens* Factor

The first *Hensgens* factor, the extent to which the purpose of the amendment is to defeat federal jurisdiction, weighs in favor of denying the motion to amend. "When analyzing the first *Hensgens* factor, district courts have considered whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862, at *4 (E.D. La. May 12, 2005) (Africk, J.); *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 429, 431 (E.D. Tex. 1995) ("[I]n the cases in which it was apparent that the Plaintiff knew about the nondiverse defendant's activities at the time the suit was originally brought in state court but still chose not to include that party as a defendant, the courts have viewed the later attempt to add the nondiverse defendant as nothing more than an attempt to destroy diversity."). "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the primary purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Schindler*, 2005 WL 1155862, at *3.

Here, it is unclear whether the Plaintiffs knew or should have known about Taylor-Seidenbach's involvement at the time the suit was filed in the state court. First, the Plaintiffs make no indication in the instant motion as to when they learned of Taylor-Seidenbach's alleged involvement other than to say that they received "additional information." R. Doc. 37-1, p. 1. This presents two problems: 1) "additional information" sounds as if the Plaintiffs were potentially aware of Taylor-Seidenbach to some extent; and 2) the Plaintiffs have not indicated what information they have obtained demonstrating that Taylor-Seidenbach is only now a viable defendant. Moreover, the amended and supplemental complaint offers little help to the analysis as the Plaintiffs vaguely state that Taylor-Seidenbach "<u>at various times</u>, while Mr. Legeaux was

4

employed at Avondale Shipyards, Ingalls Shipyards, and/or Tenneco, Inc. from 1966 through 1972, Taylor-Seidenbach manufactured, sold, distributed, supplied, used or retained asbestos or asbestos-contained products. . . ." R. Doc. 37-2, p. 1-2 (emphasis added).

Second, the Court notes that in a motion not before the undersigned the Plaintiffs have offered a little more light on the potential addition of Taylor-Seidenbach. In that motion, the Plaintiffs state that during another deposition and subsequent invesigation conducted by Plaintiffs' counsel in another case that they became aware of Taylor-Seidenbach's responsibility for the "application and maintenance of the insulation material at Avondale Shipyard in New Orleans." R. Doc. 40-1, p. 5.

However, even if the Plaintiffs had made these arguments in its instant motion, the Court would still be skeptical of the Plaintiffs' request. First, the Court has concerns about the propriety of considering the allegations and what if any credence to give them. The Plaintiffs in the instant matter have only one counsel enrolled in the matter, Mr. Alex Dunn, Jr.; nonetheless, three other attorneys—Mssrs. Randy Gori, James Ferrell, and Matthew Dillahunty ("Unenrolled Counsel") who are all members of the bar of states other than Louisiana —have signed onto the instant motion as well as the original complaint but *have not* submitted applications to appear *pro hac vice* or otherwise appear before this Court. There is also no indication on the record that Unenrolled Counsel made any similar motion to appear before the state court.

Besides the obvious concerns of unenrolled counsel appearing on motions presenting arguments before this Court, the Court is particularly concerned given that the attorney present at the deposition wherein Taylor-Seidenbach's involvement allegedly became known was Mr. Dillahunty, an unenrolled counsel. The Court is not sure what credence if any to give the allegations derived from an attorney not properly before this Court, and this strengthens the specter of suspicion surrounding the motion.

Additionally, Defendants have supplied pages from that deposition that show that Taylor-Seidenbach's counsel merely noted on the record that Taylor-Seidenbach was not a party to the litigation, that it reserved its right should it be made party to that litigation, and noted that it was not appearing in the litigation. R. Doc. 41-1, p. 2, Tr. 73. From the pages of the deposition provided to the Court, the Court is not convinced why the Plaintiffs would have learned that Taylor-Seidenbach should be involved in the instant litigation at that time or even if the deposition was even in connection to a similar time period or allegations as being made in this case. Moreover, assuming *arguendo* that the deposition in the other case was connected to asbestos and related claims, Taylor-Seidenbach's presence there suggests to the Court that the Plaintiffs possibly should have known of Taylor-Seidenbach's involvement through due diligence because there must have existed enough facts and information for Taylor-Seidenbach to decide to be present there.[1]

Ultimately, this confusion as to what the Plaintiffs knew or should have known about Taylor-Seidenbach's involvement does not aid the Plaintiffs' request to add Taylor-Seidenbach as a party now. Rather, given this confusion and the surrounding circumstances of the instant motion—namely that the amendment would likely defeat diversity jurisdiction, that the instant motion was filed shortly before a motion to remand, that the Plaintiffs' have not filed a response to the allegations that the motion is to defeat jurisdiction, and that the original complaint explicitly disavowed any federal cause of action (R. Doc. 1-1, p. 5)—the Court is highly suspicious of the Plaintiffs' motives.

---

[1] The Court also expresses some skepticism that the Plaintiff could not have identified Taylor-Seidenbach given that Taylor-Seidenbach is allegedly responsible for insulation and the Plaintiff's ability to identify over twenty other defendants involved with asbestos related products. Indeed, the Court also notes that Taylor-Seidenbach has been a defendant in a number of asbestos related cases in this circuit and even this district. *See, e.g., Bourke v. Exxon Mobil Corp.,* No. 15-5347, 2016 WL 836872, at *6 (E.D. La. Mar. 4, 2016).

However, regardless of the Court's concern about the Plaintiffs' motive, "[w]ith regard to the first *Hensgens* factor, the case law indicates that as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prod. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (Nov. 15, 2002) (Fallon, J.); *Bienaime v. Kitzman*, No. 00-473, 2000 WL 381932, at *2 (E.D. La. Apr. 12, 2000) (Africk, M.J.) (same). "To prevail in an asbestos case in Louisiana, a plaintiff must establish by a preponderance of the evidence that (1) the clamant was exposed to asbestos from the defendant's product and (2) the exposure substantially caused the claimant's injury." *Laurent v. New Orleans City*, No. 14-2022, 2015 WL 5254723, at *2 (E.D. La. Sept. 9, 2015) (citation omitted). Here, the Plaintiffs allege "at various times, while Mr. Legeaux was employed at Avondale Shipyards, Ingalls Shipyards, and/or Tenneco, Inc. from 1966 through 19972, Taylor-Seidenbach manufactured, sold, distributed, supplied, used or retained asbestos or asbestos-contained products thereby exposing Mr. Legeaux to the inhalation of products causing irreparable and progressive lung damage and which led to and directly resulted in Mr. Legeaux's lung cancer which was diagnosed on June 16, 2015." R. Doc. 37-2, p. 1-2. While the allegations made in the complaint are not perhaps as precise as possible, the Court finds that the allegations are enough to state a valid claim against Talyor-Seidenbach under Louisiana in connection to the asbestos related claims.

Ultimately, the Court finds that the first factor weighs slightly against granting the amendment because of the highly suspicious circumstances surrounding the amendment. *See Schindler*, 2005 WL 1155862, at *4 (finding first factor weighed slightly against granting amendment where Court opined plaintiff's motivation was likely to defeat jurisdiction although plaintiff stated a valid claim). "However, the fact that one factor might weigh in favor of denying the amendment is not dispositive of this Court's inquiry. . ." *Id.*

7

### B. The Second *Hensgens* Factor

The second *Hensgens* factor, whether the Plaintiff has been dilatory in asking for amendment, weighs in favor of granting the amendment. The request to amend comes approximately one month after the Plaintiffs argue they learned of Taylor-Seidenbach's involvement and less than one month after the suit was removed. Moreover, there has not been a scheduling order issued as of yet; nor has there been any significant steps taken in the proceeding. *See Schindler*, 2005 WL 1155862, at *4 (finding Plaintiff not dilatory where "Plaintiff requested the amendment a month and a half after she filed her state court petition and less than 30 days after the case was removed to federal court."); *Herzog*, 2002 WL 31556352, at *2 ("[T]he same cases, when applying the second *Hensgens* factor, found that when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred, the Plaintiff was not dilatory in seeking to amend the complaint."). As such, the second factor weighs in favor of allowing the amendment.

### C. The Third *Hensgens* Factor

The third *Hensgens* factor, whether plaintiff will be significantly injured if amendment is not allowed, weighs against granting the amendment. While the rule states "significant injury," the general approach in this District has been focused mostly on the inefficiency, waste of judicial resources, danger of inconsistent results, and cost to the Plaintiff that results from forcing the Plaintiffs to bring a separate suit on the valid claim. *See id.* ("[T]he third *Hensgens* factor favors the Plaintiff because forcing the Plaintiff to file a separate suit on the same facts is inefficient and a waste of judicial resources.").[2] Given this emphasis, the Court feels that it must recognize these

---

[2] *See also Schindler,* 2005 WL 1155862, at *4 (citation omitted) ("A plaintiff may be prejudiced considering the financial burden imposed by forcing such a plaintiff to maintain two parallel lawsuits arising out of the same facts in two different courts. District courts have also noted that forcing a plaintiff to maintain two lawsuits in two different courts which arise out the same facts wastes judicial resources and may lead to inconsistent results."); *Jade Marine, Inc. v. Detroit*

concerns. By forcing the Plaintiffs to file an action in state court against Taylor-Seidenbach, the Plaintiffs will likely incur costs for litigating in parallel proceedings in both state and federal court on similar legal issues. However, the Court does not find these costs to necessarily be dispositive of the issue nor necessarily significant.

The Defendants argue that the Plaintiffs will not be significantly injured by not allowing the amendment because the Plaintiffs have not proffered any reason why they would be injured and the potential liability of the Defendants would be solidary among liable Defendants if the Plaintiffs recover. R. Doc. 41, p. 8. Indeed, courts have recognized that "[a]nother consideration bearing on [the significant injury] factor is whether a plaintiff can be afforded complete relief without the amendment." *Schindler,* 2005 WL 1155862, at *4 (citing *Jerido v. Am. Gen. Life and Acc. Ins. Co.*, 127 F.Supp.2d 1322, 1325 (M.D.Ala.2001)); *see also Anzures v. Prologis Texas I LLC,* 886 F. Supp. 555, 565 (W.D. Tex. 2012) (same). Moreover, the Court finds merit to the Defendants' argument. Because the Plaintiffs' alleged exposure occurred prior to 1980, the potential liability is solidary[3] among the Defendants, such that the Plaintiff can be afforded "complete relief" should his claim be successful. *See Cole v. Celotex Corp.*, 599 So.2d 1058, 1068 (La. 1992) ("[W]e find that substantial injury producing exposures giving rise to plaintiffs' claims

---

*Diesel Corp.*, No. 02-2907, 2002 WL 31886726, at *2 (E.D. La. 2002) (Vance, J.) ("Third, and finally, the Court notes that denial of amendment would prejudice plaintiff by requiring plaintiff to fight a two-front war, litigating against Detroit Diesel and S & S in federal court while litigating against Marquette, on related claims, in state court."); *Bienaime*, 2000 WL 381932, at *5 ("[I]f the amendment is not allowed, [Plaintiff] will be forced to file a separate lawsuit against [Defendant] in state court. To put [Plaintiff] in such a position, would be a waste of judicial resources."); *Burton v. Mentor Corp.*, No. 96-2078, 1996 WL 751063, at *2 (E.D. La. Oct. 29, 1996) (Wilkinson, M.J.) ("Substantively, plaintiff would suffer no real harm if the amendment were denied since it appears that his claims against Touro could still be asserted in state court. Procedurally, however, considerations of cost and efficiency militate in favor of not requiring plaintiff to prosecute two separate claims in two forums when both arise generally from the same set of facts and circumstances.").

[3] "An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." La. Civ. Code art. 1794.

occurred before the August 1, 1980, effective date of Act 431, and, therefore, affirm the Third Circuit's holding that the provisions of the Louisiana Comparative Fault Law are inapplicable and that this case is governed by pre-Act law—contributory negligence and virile share principles."); *See also, Blando v. Business Men's Assur. Co. of America,* No. 12-0559, 2012 WL 6699090, at *4 (W.D. Mo. Aug. 21, 2012) (citing *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)) (finding no significant injury where defendant joint tortfeasor in asbestos-exposure case was not added under same *Hengens*-style test). Because the Plaintiffs can be afforded complete relief without the amendment, the Court finds that there would be no "significant injury" in denying the amendment.

### D. The Fourth *Hensgens* Factor

The fourth *Hensgens* factor, any other factors bearing on the equities, weighs in favor of denying the amendment. As this Court has previously explained,

> When determining "other factors," the Court typically balances the competing interests of the parties. Courts have noted that the defendant has a compelling interest in maintaining the federal forum. The rationale behind removal statutes is that diverse defendants have an option of selecting a state or federal forum. However, there is also the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources.

*Neely v. Scottsdale Ins. Co.*, No. 14-0048, 2014 WL 1572441 at *8 (E.D. La. Apr. 17, 2014) (Roby, M.J.) (internal quotations and citations omitted). Here, the Defendants cite their "compelling interest" in choosing the federal forum. R. Doc. 41, p. 8. While the Court notes that this is generally not enough to keep the Defendants in the federal forum, the Court's findings in relation to the first and third *Hengens* factors—namely that the Plaintiff likely has an improper motive to the amendment and that there is no significant injury to the Plaintiff in denying the amendment—strengthens the weight of the Defendants' interest in the federal forum. As such, the overall balance weighs in favor of denying the amendment.

The Court thus finds that three of the four *Hensgens* factors weigh in favor of denying the amendment. While the Plaintiffs have not been dilatory in seeking the amendment, timeliness is not a panacea for the Court's concerns with the diversity defeating addition of a non-diverse defendant. Therefore, the motion for leave to file is denied.

## IV.     Order

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Leave to File First Supplemental and Amended Complaint (R. Doc. 37)** is **DENIED**.

New Orleans, Louisiana, this 14th day of October 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**